IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA


RUMALDO BARBOZA,

       Petitioner,              No. 1:05-cv-01403 ALA (HC)

    vs.

JAMES A. YATES,              ORDER

        Respondent.

_____/

    Petitioner is a state prisoner proceeding *pro se* with an application for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254(a). Pending before this Court are Petitioner's application for a writ of habeas corpus (Doc. 1), Respondent's Answer (Doc. 21), and Petitioner's Traverse (Doc. 30). For the reasons discussed below, Petitioner's application will be denied.

I

    On September 7, 2001, Petitioner was convicted by a Kern County Superior Court jury of: (1) possessing a firearm by a person who has been convicted of a felony (Cal. Penal Code § 12021(a)(1)); (2) possessing drug paraphernalia (Cal. Health & Safety Code § 11364); and (3) resisting, delaying, or obstructing a peace officer (Cal. Penal Code § 148). (Lodged Doc. 4 at 2.)

1

In a bifurcated portion of the trial, the trial court found true allegations that Petitioner had suffered four prior violent or serious felony convictions for purposes of California's Three Strikes Law.[1]  On October 5, 2001, Petitioner was sentenced to 25 years to life in state prison pursuant to the Three Strikes Law.  (*See id.*)

A

Petitioner filed a direct appeal of the judgment of conviction before the California Court of Appeal, Fifth Appellate District.  In its decision affirming the judgment, the Court of Appeal summarized the relevant facts as follows:[2]

> On December 5, 2000, Officer Eric Martinez of the California Highway Patrol was on duty in Bakersfield with a friend named Robert Pfeifle, who was accompanying him as a civilian 'ride-along.' Pfeifle was employed at the time as a detention officer for the Kern County Sheriff's Department.

> Shortly after 4 o'clock in the afternoon, the two men were in Martinez's patrol car driving on a residential street when they encountered [Petitioner] driving in the opposite direction, by himself, in a brown GMC pickup. As [Petitioner] drove by, Martinez noticed he was not wearing a seat belt. Martinez 'flipped a "U"' and got behind [Petitioner] intending to make an 'enforcement stop.' [Petitioner] turned left onto Oregon Street and speeded up. Martinez followed in the patrol car. [Petitioner] rolled through a stop sign at the end of the block and turned left onto Palm Street. At this point, Martinez activated his 'Code 3' lights and continued the pursuit.

> [Petitioner] turned immediately right from Palm Street into an alley, with Martinez directly behind him. [Petitioner] slowed down and threw what appeared to be a white rag out of the open, passenger-side window of the pickup, before accelerating again down the alley. Martinez stopped his patrol car briefly so Pfeifle could retrieve the rag, which, as they soon discovered, contained a loaded handgun.

> By then, [Petitioner] was 200 or 300 feet away near the end of the alley. Martinez resumed the chase but, as he did, [Petitioner] made a quick right turn into a driveway off the alleyway and brought the pickup to a sliding stop. He got out, climbed through a hole in a nearby

---

[1]  These four prior convictions were: (1) a 1991 conviction for corporal punishment of a child (Cal. Penal Code § 273d); (2) a 1991 conviction for the willful injury of a child under circumstances likely to cause great bodily injury (Cal. Penal Code § 273a(a)); (3) a 1984 conviction for first degree burglary (Cal. Penal Code § 459); and (4) a 1979 conviction for robbery (Cal. Penal Code § 211).

[2]The factual findings of the Court of Appeal are presumed correct as Petitioner has not raised a challenge to their accuracy.  *See* 28 U.S.C. § 2254(e)(1).

2

fence, and ran off between some apartment buildings. Martinez chased after [Petitioner] on foot, but soon gave up the pursuit and returned to his patrol car.

Back in the alley, Martinez ran the license plate number of the pickup, which he learned was registered to a Jessica Vela on Eighth Street in Bakersfield. He and another officer who had come to the scene then searched the pickup. They found a syringe with a cap on it, and an appointment card for the Kern Medical Center with [Petitioner's] name on it. A driver's license search under that name showed [Petitioner] had the same Eighth Street address as Vela.

Martinez went to the address later the same afternoon and spoke to Vela. [Petitioner] was not at the house, but there were several photographs of him on the wall. Vela also gave Martinez [Petitioner's] photo identification card, which the officer used to confirm that it was [Petitioner] he had seen in the pickup earlier that day. Pfeifle likewise confirmed the identification.

The pickup was registered to Vela only because [Petitioner] had no driver's license. He was the person who usually drove it.

Meanwhile, at about the same time Officer Martinez first spotted [Petitioner] driving the brown pickup, Deputy Steven Williams of the Kern County Sheriff's Department was dispatched to an apartment complex less than a half block away to investigate an incident reported by sisters Juanita and Esmeralda Valdez, both then age 15 (although one is older than the other by 11 months).

Juanita would later testify she had been standing outside her apartment with her cousin at about 3:30 that afternoon, when a man drove up in a brown pickup and talked to them briefly. The two girls walked a half block to the cousin's apartment, and the man followed them in his pickup. He got out and went into a different apartment for about 10 minutes, then came out again and drove away. Juanita and her cousin walked back to Juanita's apartment, where they were apparently joined outside by Esmeralda. The man in the brown pickup drove up shortly and went into one of the apartments. When he came back out, he told Esmeralda his arm was broken and offered her $20 to drive him out of the neighborhood. She refused, and the man left. The entire encounter took 20 or 30 minutes.

At some point during this period, Juanita wrote down the license plate number of the brown pickup. She gave it to Deputy Williams. It turned out to be the same as the number on the brown pickup Officer Martinez would pursue a few moments later.

Sometime after he interviewed the Valdez sisters, Deputy Williams drove to the alleyway where Martinez and several other officers were investigating the brown pickup. Williams accompanied Martinez that evening to Jessica Vela's house.

A month and a half later, on January 18, 2001, Detective Jeffrey Hunt of the Kern County Sheriff's Department prepared two photo lineups, each containing a photograph of [Petitioner] (but in different positions on the page). He showed one of them to Juanita Valdez and the other, separately, to Esmeralda. Both picked out [Petitioner] as the person they had seen in the brown pickup on December 5th.

In the intervening period, someone from the state parole office reportedly had also shown the two sisters a photo lineup containing a picture of [Petitioner].

(Lodged Doc. 4.)

B

On June 6, 2003, the California Court of Appeal for the Fifth Appellate District affirmed Petitioner's judgment of conviction on his direct appeal.  (Lodged Doc. 4.)  On June 20, 2003, Petitioner filed a petition for rehearing in the Court of Appeal.  (Lodged Doc. 7.)  The petition was denied on June 30, 2003.  (Lodged Doc. 8.)  On July 16, 2003, Petitioner sought review in the California Supreme Court.  (Lodged Doc. 5.)  The California Supreme Court denied the petition for review on August 27, 2003.  (Lodged Doc. 6.)

C

On May 5, 2004, Petitioner filed a petition for a writ of habeas corpus in the Kern County Superior Court.  (Lodged Doc. 9.)  The petition was denied on May 13, 2004 for improper service.  (Lodged Doc. 10.)

D

On June 18, 2004, Petitioner filed a petition for a writ of habeas corpus in the California Supreme Court, case number S125622.  (Lodged Doc. 11.)  The petition was summarily denied on June 8, 2005.  (Lodged Doc. 12.)

E

On November 8, 2005, Petitioner filed an application for a writ of habeas corpus in this Court pursuant to 28 U.S.C. § 2254(a).  (Doc. 1.)  Respondent acknowledges that Petitioner has exhausted his stated grounds for relief.  (Doc. 21 at 3.)

II

A

The instant petition was filed after the enactment of the Antiterrorism and Effective Death

4

Penalty Act of 1996 ("AEDPA").  Under AEDPA, a federal court has limited power to grant habeas

corpus relief under § 2254.  AEDPA provides that

> An application for a writ of habeas corpus on behalf of a person in
> custody pursuant to the judgment of a State court shall not be granted
> with respect to any claim that was adjudicated on the merits in State
> court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law, as
> determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in the
> State court proceeding.

28 U.S.C. § 2254(d).

Under § 2254(d)(1), "[a] state-court decision is 'contrary to'. . . clearly established

[United States Supreme Court] precedents if it 'applies a rule that contradicts the governing law

set forth in [Supreme Court] cases,' or if it 'confronts a set of facts that are materially

indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result

different from [the Supreme Court's] precedent." *Early v. Packer*, 537 U.S. 3, 8 (2002) (quoting

*Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)).

Under the "unreasonable application" clause of § 2254(d)(1), a federal court may grant

habeas relief if the state court identified the correct governing legal principle from Supreme

Court precedent, but unreasonably applied that principle to the facts of the case at bar. *Williams*,

529 U.S. at 413.  A petitioner bears the burden of showing that the state court applied Supreme

Court precedent in an objectively unreasonable manner. *Price v. Vincent*, 538 U.S. 634, 641

(2003) (citation omitted).  A federal habeas court "may not issue the writ simply because that

court concludes in its independent judgment that the relevant state-court decision applied clearly

established federal law erroneously or incorrectly.  Rather, that application must also be

unreasonable." *Williams*, 529 U.S. at 411; *see also Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)

(it is "not enough that a federal habeas court, in its independent review of the legal question, is left with a firm conviction that the state court was erroneous") (internal quotation marks and citations omitted).

Section 2254(d)(2) "authorizes federal courts to grant habeas relief in cases where the state-court decision 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Taylor v. Maddox*, 366 F.3d 992, 999 (9th Cir. 2004) (quoting 28 U.S.C. § 2254(d)(2)). "[A] federal court may not second-guess a state court's fact-finding process unless, after review of the state-court record, it determines that the state court was not merely wrong, but actually unreasonable."

## B

"In determining whether a state court decision is contrary to federal law, we look to the state's last reasoned decision[.]" *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002). Here, Petitioner's fourth through tenth claims were raised on his direct appeal to the California Court of Appeal. It rejected these claims in a reasoned opinion. (*See* Lodged Doc. 4.) Therefore, this Court must look to the Court of Appeal's decision in determining these claims. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991).

There is, however, no last reasoned decision regarding Petitioner's first through third claims. Where there is no last reasoned decision, such as where a succession of state courts issue summary or "postcard denials," the federal court is confronted with a situation where there is "nothing to which we can defer." *Luna v. Cambra*, 306 F.3d 954, 960 (9th Cir. 2002), *amended* 311 F.3d 928 (9th Cir. 2002).[3] In such instances, the federal court must conduct "an independent review of the record . . . to determine whether the state court clearly erred in its application of

---

[3]A state court's denial of a habeas petition without comment or citation constitutes a decision on the merits of the federal claims. *Hunter v. Aispuro*, 982 F.2d 344, 347-48 (9th Cir. 1992) (reaffirming *Harris v. Superior Court*, 500 F.2d 1124, 1127-29 (9th Cir. 1974)).

controlling federal law." *Id.* (internal quotation marks and citations omitted). This type of federal habeas review is not de novo. *Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000) ("Federal habeas review is not de novo when the state court does not supply reasoning for its decision, but an independent review of the record is required to determine whether the state court clearly erred in its application of controlling federal law.") (citation omitted).

## C

In the instant habeas application, Petitioner asserts that he is entitled to relief on ten grounds.[4] First, Petitioner claims that his trial counsel was ineffective for failing to request an examination and hearing to determine Petitioner's competency to stand trial. Second, Petitioner claims that the trial court erred by failing to order an examination and hearing *sua sponte* to determine Petitioner's competency. Third, Petitioner claims that his appellate counsel was ineffective for not arguing: (1) that trial counsel was ineffective for failing to formally file a motion for a competency hearing; and (2) that the trial court "committed a constitutional error and denied [Petitioner] a fair trial when it neglected it's [sic] Sua Sponte obligation to order a competency hearing or a medical examination of [Petitioner]." (Doc. 1 at 30.) Fourth, Petitioner claims that the trial court erred by denying Petitioner's challenge for cause of Juror No. 4. Fifth, Petitioner claims that the trial court erred by admitting highly prejudicial evidence. Sixth, Petitioner claims that his due process rights were violated by the prosecution's failure to disclose statements that two witnesses made to state parole agents. Seventh, Petitioner claims that the prosecution erred by failing to admonish a witness regarding inadmissible evidence and then for inadvertently eliciting that inadmissible evidence from the witness at trial. Eighth, Petitioner

---

[4]Petitioner originally claimed eleven grounds for relief. He has since withdrawn his claim that the trial court erred by denying his challenge for cause of prospective juror Turnage (ground 5). (Doc. 30 at 8 ("Petitioner concedes ground 5 due to Turnage being removed from the panel.").) Accordingly, the Court only addresses Petitioner's remaining ten grounds for relief.

claims that his sentence violates the Constitution's prohibition against cruel and unusual punishment. Ninth, Petitioner claims that his trial counsel was ineffective for failing to object to his sentence. Last, Petitioner claims that the cumulative impact of any errors denied him a fair trial. Each claim is discussed in turn below.

III

A

Petitioner claims that his trial counsel was ineffective for not requesting an examination and hearing to determine his competency to stand trial. Petitioner raised this argument in his habeas petitions with the Kern County Superior Court and California Supreme Court. (*See* Lodged Docs. 9, 11.) The Kern County Superior Court denied the petition for improper service. (Lodged Doc. 10.) The California Supreme Court denied the petition on the merits and issued a summary denial. (Lodged Doc. 12.) Because the California Supreme Court did not provide a basis for its decision, this Court has conducted an independent review of the record to determine whether that court clearly erred in its application of controlling federal law. *Luna*, 306 F.3d at 960.

"[T]he conviction of an accused person while he is legally incompetent violates due process" and "state procedures must be adequate to protect this right." *Pate v. Robinson*, 383 U.S. 375, 378 (1966) (citation omitted); *see also Drope v., Missouri*, 420 U.S. 162, 171 (1975) ("It has long been accepted that a person whose mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense may not be subjected to a trial."). In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court "established the legal principles that govern claims of ineffective assistance of counsel[.]" *Wiggins v. Smith*, 539 U.S. 510, 521 (2003). "An ineffective assistance claim has two components: A petitioner must show that counsel's performance was deficient, and that the deficiency prejudiced the defense." *Id.* (citing

*Strickland*, 466 U.S. at 687).

First, "[t]o establish deficient performance, a petitioner must demonstrate that counsel's representation 'fell below an objective standard of reasonableness.'" *Wiggins*, 539 U.S. at 521 (quoting *Strickland*, 466 U.S. at 688). The Supreme Court has "declined to articulate specific guidelines for appropriate attorney conduct and instead ha[s] emphasized that '[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms.'" *Id.* (quoting *Strickland*, 466 U.S. at 688). There is, however, "a strong presumption that counsel's performance falls within the 'wide range of professional assistance.'" *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986) (quoting *Strickland*, 466 U.S. at 689).

Second, a petitioner must "affirmatively prove prejudice." *Strickland*, 466 U.S. at 693. "Even if a defendant shows that particular errors of counsel were unreasonable, . . . the defendant must show that they actually had an adverse effect on the defense." *Id.* "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding" as "[v]irtually every act or omission of counsel would meet that test." *Id.*

Here, the California Supreme Court's finding – that trial counsel's failure to request a competency examination or hearing did not fall below an objective standard of reasonableness – is not contrary to, or an unreasonable application of clearly established federal law. The record indicates that there was insufficient evidence upon which to question Petitioner's competency to stand trial. Prior to trial, at an August 29, 2001 hearing, Petitioner's trial counsel informed the trial court that Petitioner was receiving "psychological or psychiatric treatment" and "has been receiving medications," including the psychotropic drug, Thorazine. (Lodged Doc. 19 [Augmented Reporter's Transcript on Appeal, Vol. I] at 85.) At the August 29 hearing, trial counsel informed the court that when he met with Petitioner the previous week, he had been unable to communicate with Petitioner due to Petitioner's medication. (*See id*. at 85-86.) Petitioner's trial counsel indicated, however, that in four subsequent meetings – the Friday,

Sunday, day before, and day of the August 29 hearing, he was able to communicate with Petitioner. (*Id.* at 86.) Petitioner's trial counsel informed the court that he did not believe Petitioner was incompetent, but raised the issue in order to inform the trial court of what had occurred. (*See id*. at 87-88.) Given trial counsel's ability to communicate with Petitioner in the days leading up to the August 29 hearing, and given that trial counsel did not raise the issue of Petitioner's medication again, there was no basis to doubt Petitioner's competency to stand trial. *See United States v. Vamos*, 797 F.2d 1146, 1150 (2d Cir. 1986) ("The question of competency to stand trial is limited to the defendant's abilities at the time of trial"); *see also United States v. Kirsh*, 54 F.3d 1062, 1071 (2d Cir. 1995) ("A failure by trial counsel to indicate that the defendant had any difficulty in preparation or in comprehending the nature of the proceedings provides substantial evidence of the defendant's competence") (internal quotation marks and citation omitted). Accordingly, Petitioner has failed to satisfy the first prong of the *Strickland* test – that trial counsel's failure to request a competency examination or hearing "fell below an objective standard of reasonableness." *Wiggins*, 539 U.S. at 521. For the same reason, Petitioner has failed to satisfy the second *Strickland* prong – that trial counsel's failure to request an examination and hearing "actually had an adverse effect on [Petitioner's] defense" and that Petitioner was affirmatively prejudiced. *Strickland*, 466 U.S. at 693. Accordingly, habeas relief is not warranted on this ground.

B

Petitioner claims that the trial court had a *sua sponte* duty to doubt Petitioner's competency to stand trial and that it erred by failing to order a competency examination and hearing. Petitioner raised this argument in his habeas petitions to the Kern County Superior Court (Lodged Doc. 9) and the California Supreme Court (Lodged Doc. 11). The Kern County Superior Court denied the petition for improper service. (Lodged Doc. 10.) The California Supreme Court summarily denied the petition on the merits. (Lodged Doc. 12.)

"[W]here the evidence raises a 'bona fide doubt' as to a defendant's competence to stand trial, the trial judge on his own motion must empanel a jury and conduct a hearing to determine competency to stand trial." *De Kaplany v. Enomoto*, 540 F.2d 975, 979 (9th Cir. 1976) (explaining *Pate*, 383 U.S. at 385).

As discussed *supra*, the record indicates that there was no evidence before the trial court raising a bona fide doubt as to Petitioner's competency to stand trial. Although Petitioner's trial counsel informed the court that Petitioner was taking psychotropic medication and that trial counsel had previously been unable to communicate with Petitioner, trial counsel also stated that in his four most recent meetings with Petitioner, he was able to communicate with Petitioner. Furthermore, the trial court was able to observe Petitioner at the August 29 hearing and other hearings. There is nothing in the record to indicate that Petitioner did anything to place his competency in doubt during these proceedings. *See Vamos*, 797 F.2d at 1150 ("deference is owed to the district court's determinations based on observation of the defendant during the proceedings"). Accordingly, habeas relief is not warranted on this ground.

C

Petitioner claims that his appellate counsel was ineffective for not raising the above two claims on direct appeal. Petitioner presented this claim to the California Supreme Court in his habeas petition. (Lodged Doc. 11.) The California Supreme Court summarily rejected this claim. (Lodged Doc. 12.)

The standard set forth in *Strickland* regarding ineffective assistance of counsel claims applies to claims regarding appellate counsel. *See Smith v. Robbins*, 528 U.S. 259, 285 (2000) ("the proper standard for evaluating Robbins' claim that appellate counsel was ineffective . . . is that enunciated in *Strickland*"). As noted *supra*, "[a]n ineffective assistance claim has two components: A petitioner must show that counsel's performance was deficient, and that the deficiency prejudiced the defense." *Wiggins*, 539 U.S. at 521 (citing *Strickland*, 466 U.S. at

687). Moreover, appellate counsel does not have a constitutional duty to raise every nonfrivolous issue on behalf of his client. *Jones v. Barnes*, 463 U.S. 745, 751 (1983).

As discussed *supra*, there was no basis for trial counsel or the trial court to doubt Petitioner's competency to stand trial. Accordingly, Petitioner's appellate counsel cannot be considered ineffective for having failed to raise this claim on appeal. *Turner v. Calderon*, 281 F.3d 851, 872 (9th Cir. 2002) ("A failure to raise untenable issues on appeal does not fall below the *Strickland* standard."). Therefore, habeas relief is not warranted on this ground.

D

Petitioner claims that the trial court's denial of his challenge for cause to Juror No. 4 violated his constitutional right to a fair and impartial jury. During voir dire, Juror No. 4 informed the trial court that her husband was a retired police captain for the City of Bakersfield and that she and her husband have two close friends who also retired from law enforcement service. (Lodged Doc. 17 [Reporter's Transcript on Appeal, Vol. III] at 371, 378-79.) Juror No. 4 testified that based on her personal relationships, she would be inclined to give more credence to the testimony of a law enforcement official. (*Id.* at 380.) Juror No. 4 also testified, however, that she believed that she could put these feelings aside and could fairly evaluate all witnesses using the same standards. (*Id.* at 404-05.)

Petitioner's trial counsel challenged Juror No. 4 for cause. (*Id.* at 405-06). The trial court summarily denied the challenge. (*Id.* at 406.) Because Petitioner's trial counsel had used all of his peremptory challenges (*id.*), Juror No. 4 remained on the panel.

On direct appeal, Petitioner argued that the trial court's denial of his challenge for cause of Juror No. 4 violated his constitutional right to a fair and impartial jury. (Lodged Doc. 4 at 6.) The Court of Appeal rejected this claim. It reasoned as follows:

> Generally speaking, the two prospective jurors [Juror No. 4 and Turnage] said they would be inclined, given their personal relationships with law enforcement officers, to give more credence to an officer's testimony than to that of other witnesses. They also

said, however, that they felt they could put these feelings aside and evaluate the testimony of all witnesses impartially. Under these circumstances, we are bound to accept the trial court's determination as to their ability to do so.

(Lodged Doc. 4 at 6.)

The impartiality of an individual juror is a question of fact entitled to the presumption of correctness on federal habeas review. *Patton v. Yount*, 467 U.S. 1025, 1038 (1984). "[T]he question is whether there is fair support in the record for the state courts' conclusion that the juror[] here would be impartial." *Id.* The trial court's determination "is essentially one of credibility, and therefore largely one of demeanor." *Id.* As such, "the trial court's resolution of such questions is entitled, even on direct appeal, to special deference. The respect paid such findings in a habeas proceeding certainly should be no less." *Id.* (internal quotation marks and citations omitted).

The Court of Appeal on direct appeal deferred to the trial court's determination regarding the challenge for cause to Juror No. 4. Although Juror No. 4 expressed an inclination to give more credence to a law enforcement officer's testimony, she also testified that she believed she could put this inclination aside and evaluate the testimony of all witnesses impartially. There is nothing in the record that impeaches Juror No. 4's response. The Court of Appeal's rejection of this claim was not an unreasonable application of, or contrary to, clearly established federal law. Accordingly, habeas relief is not warranted on this ground.

E

Petitioner claims that the trial court erred by admitting evidence at trial that he offered a 15 year-old witness, Esmeralda Valdez, $20 to drive him out of the neighborhood shortly before Petitioner's encounter with the police (the "$20 Offer"). Petitioner claims that admitting evidence of the $20 Offer was fundamentally unfair because it created the impression that Petitioner was a suspicious and unsavory character.

13

1    At trial, the Valdez sisters testified in relevant part that on December 5, 2000,

2    approximately 30 minutes before Petitioner's encounter with the police, Petitioner offered

3    Esmeralda $20 to drive him out of the area.  (Lodged Doc. 20 [Augmented Reporter's Transcript

4    on Appeal, Vol. II] at 267, 274.)  The trial court admitted the testimony over the objection of

5    Petitioner's trial counsel, finding that its probative value outweighed any potential prejudice.

6    (Lodged Doc. 19 [Augmented Reporter's Transcript on Appeal, Vol. I] at 158.)  However, the

7    trial court: (1) excluded Esmeralda's testimony that she had earlier seen Petitioner get out of his

8    truck with two other girls and that Petitioner's pants were unzipped and his genitalia was

9    exposed (*id.* at 156); and (2) prohibited the prosecution from arguing that Petitioner engaged in

10    some further bad act by trying to get the Valdez sisters into a truck containing firearms (Lodged

11    Doc. 20 at 171).

12    On direct appeal, Petitioner challenged the trial court's ruling admitting testimony of the

13    $20 Offer as unduly prejudicing the jury.  The Court of Appeal rejected this claim.  It reasoned

14    as follows:

15    > [Petitioner] does not challenge the relevance of the Valdezes' testimony generally,
16    > insofar as it supports Officer Martinez's identification of [Petitioner] as the driver of the
      > brown pickup, especially in light of Jessica Vela's testimony questioning Martinez's
17    > identification.  Nor does he dispute that some additional details were relevant to show
      > this was something more than just a casual encounter, and the sisters had both reason and
18    > opportunity to take careful note of his appearance.  Finally, [Petitioner] does not question
      > the evidence that he followed Juanita in his pickup, that Juanita wrote down the license
19    > number and reported it to police, or that the police conducted a criminal investigation.

20    > In short, the unchallenged evidence established that [Petitioner] did *something* during his
      > encounter with the Valdezes that raised at least a suspicion of criminal activity.  The $20
21    > offer suggested a basis for that suspicion far more benign than the real one, and may have
      > deterred the jurors from speculating about what really happened.  In any event, it
22    > permitted no unfavorable inference beyond the one that had already been created by the
      > admissible evidence.
23

24    (Lodged Doc. 4 at 15-16 (emphasis in original).)

25    As a preliminary matter, to the extent Petitioner contends that the trial court's decision to

26    allow testimony of the $20 Offer violated state evidentiary rules or other state law, this Court

lacks the authority to review alleged violations of state law in a federal habeas proceeding. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions"); *see also Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) (federal habeas relief "does not lie for errors of state law") (citations omitted).

The Court of Appeal, having found that the trial court did not abuse its discretion under state rules of evidence, concluded that the admission of the challenged evidence did not violate Petitioner's right to a fair trial. In a federal habeas application, the court "is limited to determining whether the admission of evidence rendered the trial so fundamentally unfair as to violate due process. The admission of 'other acts' evidence, which a defendant contends is unduly prejudicial, will violate due process only when there are no permissible inferences the jury may draw from the evidence." *Windham v. Merkle*, 163 F.3d 1092, 1103 (9th Cir. 1998) (internal quotation marks and citations omitted); *Lisenba v. People of State of Cal.*, 314 U.S. 219, 236 (1941) ("[D]enial of due process is the failure to observe that fundamental fairness essential to the very concept of justice. In order to declare a denial of it we must find that the absence of that fairness fatally infected the trial; the acts complained of must be of such quality as necessarily prevents a fair trial.").

Here, evidence of the $20 Offer served to establish that the Valdez sisters' encounter with Petitioner was substantial – lasting between 10 to 20 minutes (Lodged Doc. 20 at 268) – rather than fleeting. The Valdez sisters' testimony regarding the $20 Offer was probative as it corroborated the testimony of Officer Martinez and his ride-along passenger in identifying Petitioner. In sum, as evidence of the $20 Offer was probative, its admission did not "fatally infect[] the trial[.]" *Lisenba*, 314 U.S. at 236. Habeas relief is not warranted on this ground.

F

Petitioner claims that the prosecution's failure to disclose statements made by the Valdez

sisters to state parole agents violated his federal due process rights. Petitioner exhausted this claim in his direct appeal. In rejecting this claim, the Court of Appeal held that the prosecution's failure to turn over the statements was harmless. (Lodged Doc. 4 at 17.) The Court of Appeal found as follows:

> The prosecutor's failure to turn over the parole agent's report was harmless. In arguing the contrary, [Petitioner] speculates that Agent Williams may have improperly influenced the [Valdez] sisters' identification of him, thus tainting their subsequent identifications provided to Detective Hunt . . . .
>
> [However,] [t]he Valdez sisters' identification of [Petitioner] as the person they saw in the brown pickup a half hour before the gun incident was merely corroborative of the identifications by Officer Martinez and his ride-along passenger who, of course, were present during the incident itself. Moreover, apart from their photo identifications of [Petitioner], they wrote down the license plate number of the brown pickup the person was driving, which, as it turned out, belonged to [Petitioner] in all but the legal sense. And his name was found in the pickup on a medical appointment card. In view of the other evidence, it is not reasonably probable the result would have been any different had the sisters' identifications been excluded from the trial.

(Lodged Doc. 4 at 17.)

"[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland*, 373 U.S. 83, 87 (1963). "[T]here is never a real '*Brady* violation' unless the nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict. There are three components of a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999).

As discussed *supra*, to the extent Petitioner contends that the prosecution's failure to produce the parole agent's report violated state evidentiary rules or other state law, this Court lacks the authority to review alleged violations of state law in a federal habeas corpus

proceeding. *See Estelle*, 502 U.S. at 67-68; *Lewis*, 497 U.S. at 780. The Court also notes that Respondent claims that he wrongly conceded on direct appeal that the parole office is an "investigating agency" for purposes of discovery. (Doc. 21 at 33.) Whether or not Respondent improperly conceded this point (as he now claims) has no bearing on the disposition of the instant claim.

The Court of Appeal held that the prosecution's failure to produce the parole agent's report was not prejudicial. (Lodged Doc. 4 at 17.) As discussed *supra*, the Valdez sisters' identification of Petitioner simply corroborated the identification already made by Officer Martinez and his ride-along passenger. Because there was no prejudice by the prosecution's failure to produce the parole agent's report, Petitioner fails to satisfy the requirements needed to establish a *Brady* violation. *See Strickler*, 527 U.S. at 281-82. Accordingly, habeas relief is not warranted on this ground.

G

Petitioner claims that the prosecution erred when it: (1) failed to admonish a witness, Detective Hunt, regarding inadmissible evidence; and (2) then inadvertently elicited that inadmissible evidence from Detective Hunt at trial. Petitioner exhausted this claim on direct appeal. In rejecting Petitioner's claim, the Court of Appeal held that the trial court had cured any prejudice by admonishing the jury to disregard that portion of Detective Hunt's testimony. (Lodged Doc. 4 at 18.)

During an in limine hearing regarding the admissibility of the Valdez sisters' testimony, the trial court ruled that "evidence will be excluded as to [Petitioner]'s genitalia or anyone seeing [Petitioner's] genitalia." (Lodged Doc. 19 at 156.) The trial court also granted Petitioner's motion to require the prosecution to advise witnesses of its motion in limine rulings. At trial, the prosecutor asked Detective Hunt: "What was the reason for your interview [of the Valdez sisters]?" (Lodged Doc. 20 at 230.) Detective Hunt replied, "I was assigned a Penal

Code 314 case." (*Id.* at 231.)[5]

The prosecutor acknowledged that he had failed to admonish Detective Hunt. (Lodged Doc. 20 at 256.) Petitioner then moved for a mistrial. Petitioner argued that there were four individuals on the jury with some connection to law enforcement and there was a reasonable probability that at least one of them would know that § 314 refers to indecent exposure. The trial court denied Petitioner's motion, finding Detective Hunt's reference to § 314 was not automatically prejudicial. (*Id.* at 258.) The trial court held that striking that portion of Detective Hunt's testimony and admonishing the jurors to disregard it was sufficient to cure any prejudice. (*Id.* at 231, 258-59.)

On an application for a writ of habeas corpus, the standard of review for a claim of prosecutorial error is "the narrow one of due process, and not the broad exercise of supervisory power." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (citation omitted). To succeed on his claim, Petitioner must demonstrate that the prosecutorial error "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974).

The Supreme Court "normally presume[s] that a jury will follow an instruction to disregard inadmissible evidence inadvertently presented to it, unless there is an overwhelming probability that the jury will be unable to follow the court's instructions . . . and a strong likelihood that the effect of the evidence would be devastating to the defendant[.]" *Greer v. Miller*, 483 U.S. 756, 766 n.8 (1987) (internal quotation marks and citations omitted).

Detective Hunt's reference to § 314 was not automatically prejudicial. There is no evidence in the record that any of the jurors understood the meaning of the § 314 reference. The

---

[5]California Penal Code § 314 provides, in relevant part, that "[e]very person who willfully and lewdly . . . [e]xposes his person, or the private parts thereof, in any public place . . . is guilty of a misdemeanor."

trial judge himself indicated that he did not know what that code section referred to.  (Lodged Doc. 20 at 258.)  Furthermore, to the extent there could be any perceived prejudice, this Court has "no reason to believe that the jury in this case was incapable of obeying the curative instructions."  *Greer*, 483 U.S. at 766 n.8.  Accordingly, habeas relief is not warranted on this ground.

## H

Petitioner claims that his sentence of 25 years to life violates the Constitution's prohibition against cruel and unusual punishment.  Petitioner raised this claim on direct appeal.  The Court of Appeal rejected it.  In so doing, it stated:

> This is not, under any standard or level of scrutiny, one of the rare cases where the defendant's sentence can be said to be grossly disproportionate to his underlying offense, when considered in light of his lengthy criminal history.  [Petitioner], who was 45 years old when he committed the present offense, was first arrested for burglary in 1973 when he was 18.  He committed four more misdemeanors (attempted grand theft, theft, burglary, and attempted escape) before being convicted of armed robbery in 1979, the first of his four "strike" offenses.  The second strike conviction, for first degree burglary, followed in 1984 after he was caught climbing through the window of a home with a knife.  The third and fourth strikes, for corporal injury and willful cruelty to a child, occurred in 1991.  He had burned his girlfriend's three-year-old son numerous times with a cigarette.
>
> We reject [Petitioner's] contention that his three strikes sentence amounted to cruel and unusual punishment.

(Lodged Doc. 4 at 20.)

The Eighth Amendment's prohibition of cruel and unusual punishment does not require strict proportionality between the crime and the sentence.  *See Ewing v. California*, 538 U.S. 11, 21 (2003) (forbidding sentences that are "grossly disproportionate" to the severity of the crime).  Outside the context of capital punishment, "successful challenges to the proportionality of particular sentences have been exceedingly rare."  *Id.* (citation omitted).

In rejecting this claim, the Court of Appeal analyzed Petitioner's lengthy criminal history and his continuous relapses into criminal behavior.  (Lodged Doc. 4 at 20.)  Such factors are

relevant in determining whether a sentence is grossly disproportionate to the crime.  *See Rummel v. Estelle*, 445 U.S. 263, 284 (1980) (recidivist sentences "are based not merely on that person's most recent offense but also on the propensities he has demonstrated over a period of time during which he has been convicted of and sentenced for other crimes"); *see also Ewing,* 538 U.S. at 25 (specifically discussing California's Three Strikes Law and finding that "[r]ecidivism has long been recognized as a legitimate basis for increased punishment"); *Almendarez-Torres v. United States*, 523 U.S. 224, 230 (1998) (recidivism "is as typical a sentencing factor as one might imagine").  Given Petitioner's lengthy and serious criminal history, habeas relief is not warranted on this ground.

I

Petitioner claims that his trial counsel was ineffective for failing to object to Petitioner's sentence.  Petitioner exhausted this claim on direct appeal.  The Court of Appeal rejected it.  It held that because "[w]e reject [Petitioner's] contention [that] his three strikes sentence amounted to cruel and unusual punishment[,] [i]t follows he did not receive ineffective assistance of counsel."  (Lodged Doc. 4 at 20.)

As noted *supra*, "[a]n ineffective assistance claim has two components: A petitioner must show that counsel's performance was deficient, and that the deficiency prejudiced the defense." *Wiggins*, 539 U.S. at 521 (citing *Strickland*, 466 U.S. at 687).  "[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies."  *Strickland*, 466 U.S. at 697.  Having found that Petitioner's sentence did not amount to cruel and unusual punishment, the Court of Appeal correctly concluded that Petitioner was not prejudiced by trial counsel failing to object to his sentence.  Accordingly, Petitioner's ineffective assistance of counsel claim must fail.  *See Wiggins*, 539 U.S. at 521 (ineffective assistance of counsel claim requires showing counsel's deficient performance and resulting prejudice to defendant).  It follows that habeas relief is not

warranted on this ground.

J

Petitioner claims that the cumulative impact of any errors denied Petitioner his constitutional right to a fair trial. Petitioner exhausted this claim on direct appeal. In rejecting this claim, the Court of Appeal held that "[i]t follows from the foregoing discussion that the alleged errors, to the extent they were errors, were not prejudicial either individually or cumulatively." (Lodged Doc. 4 at 18.)

Under AEDPA, this Court defers to the state court's harmless error ruling, unless it is contrary to or involves an unreasonable application of Supreme Court precedent. *See* 28 U.S.C. § 2254(d)(1). Here, the alleged errors relate to perceived prosecutorial misconduct and trial court error. Errors are harmless if they do not have "substantial and injurious effect or influence in determining the jury's verdict" and unless the petitioner can establish that the error resulted in "actual prejudice." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). Petitioner has failed to demonstrate that the alleged errors resulted in actual prejudice.

This Court has concluded that the state courts' rejection of Petitioner's claims was not contrary to nor an unreasonable application of clearly established federal law as determined by the United States Supreme Court. Therefore, the Court cannot grant this application.

Conclusion

Accordingly, it is hereby ORDERED that Petitioner's application for a writ of habeas corpus is DENIED. The Clerk is DIRECTED to enter judgment and close the case.

/////

DATED: October 16, 2008

/s/ Arthur L. Alarcón
UNITED STATES CIRCUIT JUDGE
Sitting by Designation

21